UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

In re: Dean J. Smith,

        Debtors,

AUTO-OWNERS INSURANCE COMPANY,

        Appellant,                              Case No. 15-cv-12990

v                                                 Honorable Thomas L. Ludington

DEAN J. SMITH,

        Appellee.
_____/

**OPINION AND ORDER FINDING INDEBTEDNESS NONDISCHARGEABLE UNDER 11 U.S.C. § 523(a)(7) AND REMANDING TO THE BANKRUPTCY COURT FOR PROCEEDINGS CONSISTENT WITH THIS ORDER**

According to the United States Supreme Court, this case presents an issue of federalism, namely whether the language Congress chose for 11 U.S.C. § 523(a)(7) preserved the states' right to determine the penal consequence of violating state criminal law. Because the Supreme Court has decided that the principle of federalism must be respected, and that state-ordered criminal restitution meets the exception provided by Congress in § 523(a)(7), the United States Bankruptcy Court's decision to the contrary will be reversed.

Debtor Dean J. Smith was convicted of misdemeanor assault and battery in Midland County Circuit Court. Pursuant to the Michigan Constitution and the Michigan Crime Victims Rights Act ("CVRA"), M.C.L. 780.766(2), Smith was ordered to pay full restitution to the county clerk, who in turn would pay restitution to Ms. Angela Seidel and her insurance carrier, Appellant Auto-Owners Insurance Company, to the extent that it had paid her medical expenses.

Smith then sought Chapter 7 Bankruptcy protection in federal court in the Eastern District of Michigan.

Smith received a discharge on September 9, 2013. Thereafter, a dispute arose over whether Smith's restitution obligation had been discharged or whether it was a non-dischargeable obligation under 11 U.S.C. 523(a)(7). To resolve the question, the Bankruptcy Court directed that an adversarial action be commenced on December 19, 2014. After Auto-Owners filed a motion for summary judgment, the Bankruptcy Court concluded that Smith's restitution order did not meet the requirements of 11 U.S.C. 523(a)(7), and was therefore dischargeable. Auto-Owners then initiated this appeal.

## I.

### A.

The facts underlying the present appeal are as follows. On August 21, 2012 a road rage incident occurred between Debtor Smith and Ms. Seidel. Ms. Seidel testified that she and her maid of honor were driving to a friend's house to discuss her impending wedding when Smith drove up on her bumper. BR. 55-56. She testified that she applied the brake and tried to move so that Mr. Smith could pass her vehicle. BR. 57. After Smith passed her, Ms. Sedel testified that he slowed to five miles an hour. *Id*. When Ms. Seidel then tried to pass, he veered into her lane to cut her off. *Id*. About four miles later, Ms. Seidel pulled over and got out of her car to take down Mr. Smith's license plate number. BR. 57. Mr. Smith pulled over behind her, exited his car, met Ms. Seidel between the cars, and shoved her. *Id*. Ms. Seidel testified that she walked to the back of his car to get his license plate number and began reading the number to a 911 dispatcher. According to Ms. Seidel, Smith then "jumped back in his car, put his car in reverse, and put the gas on." BR. 58. She testified that the rear tire ran over her left foot, the bumper hit

her knee, and she was thrown to the ground. *Id*. Two witnesses pulled Ms. Seidel out of the road and moved her car into a neighbor's driveway. *Id.* Ms. Seidel was subsequently transported to a hospital by ambulance. *Id*.

Smith was then arrested by the Midland County Sheriff's Department and charged with felonious assault and leaving the scene of an accident. BR 34-49. Smith ultimately pled no contest to criminal assault and battery under Michigan law. BR 33.

Smith's sentencing hearing took place on February 7, 2013 in Midland County circuit Court. BR. 34. Finding Ms. Seidel credible and finding that Smith had not accepted responsibility for his actions, the circuit judge sentenced Smith to 60 days in jail and $680 in fines. BR 47-49, 92-93. Smith was also sentenced to pay restitution to his victims, as required by the Michigan constitution. *Id*. *See also* MI CONST. Art. 1, § 24 (, "[c]rime victims, as defined by law, shall have… [t]he right to restitution."). Determining that probation would not be an effective remedy, the judge did not impose a term of probation on Mr. Smith. BR. 49.

A restitution hearing took place on February 25, 3013. BR 52-103. After hearing testimony from Ms. Seidel and Smith, and arguments from both parties, the court determined that Ms. Seidel's injuries stemmed from Smith's criminal course of conduct. BR. 102. Applying the CVRA, the Court determined that Mr. Smith was therefore required to "make full restitution" for Ms. Seidel's medical expenses, and ordered Smith to pay $76,427.20. M.C.L. 780.766(2). BR 201-03. He further noted that, to the extent that Appellant Auto-Owners reimbursed Ms. Seidel, it was entitled to receipt of the restitution under the doctrine of subrogation. BR. 103. Judgment was entered on March 1, 2013 requiring Smith to pay $61,297.91 to Ms. Seidel and $15,129.90 to Auto-Owners – or the amount of Ms. Seidel's medical expenses that the insurance

company had paid. BR. 107. Smith was to make his restitution payments directly to the Midland County clerk, who in turn would distribute them to Ms. Seidel and Auto-Owners.

**B.**

Four days after judgment was entered, on June 5, 2013, Smith filed a petition for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. Although Smith listed Ms. Seidel, Auto Owners, and the 42nd Circuit Court for Midland County as creditors, they did not appear or otherwise object. Smith then received a discharge on September 9, 2013.

In the meantime, Auto-Owners paid Ms. Seidel's medical expenses in full. On April 7, 2014, an ex parte order was entered amending the previous restitution order and ordering Smith to pay the outstanding restitution amount of $67,335.52 to Auto-Owners. BR. 108.

Thereafter, in November of 2014 Smith moved to reopen his bankruptcy case. On November 13, 2014 Smith filed a motion alleging that Auto-Owners had violated the automatic stay by attempting to collect the Court-ordered restitution. BR. 6. Smith alleged that the restitution had been discharged on September 9, 2013 because it did not meet the requirements to be non-dischargeable under 11 U.S.C. § 523(a). In its response, Auto-Owners contended that, because the restitution was ordered by a Midland County circuit judge as part of a criminal conviction, it met the requirements of 11 U.S.C. § 523(a). Midland County similarly responded that the restitution was non-dischargeable because it was a condition of his sentence payable to the State for its benefit. BR 14-15.

On December 19, 2014 the bankruptcy judge entered an order directing the clerk to open an adversary proceeding and designate Smith's motion as a complaint. BR. 9. The responses were then designated as answers. Auto-Owners then moved for summary judgment, arguing that

state-court criminal restitution orders were non-dischargeable debts pursuant to 11 U.S.C. § 523(a)(7) as interpreted by *Kelly*. BR 109, 117-122. After holding a hearing and directing supplemental briefing, on July 24, 2015 the Bankruptcy Court issued an opinion denying Auto-Owner's motion for summary judgment and directing Smith to submit an order consistent with the opinion. BR. 139-49. The court reasoned that the non-dischargeability provision of 11 U.S.C. § 523(a)(7) was inapplicable because the restitution was not for the benefit of a governmental unit and was compensation for an actual pecuniary loss. *Id*. The court then entered an order granting summary judgment in favor of plaintiff and closing the adversary proceeding on August 21, 2015. BR 155.

Appellant Auto-Owners timely appealed on August 24, 2015. ECF No. 1. After appellant filed its brief, the Michigan Attorney General requested leave to file an amicus brief in support of the appellant. ECF No. 7. That motion was granted, and the attorney general filed his brief on November 25, 2015. ECF No. 9. Appellee Smith then filed his brief on December 21, 2015.

**II.**

We review the Bankruptcy Court's decision *de novo*. A first review of the plain language of 11 U.S.C. § 523(a)(7) does not appear to provide an exception to discharge in Smith's case. That section provides that an individual debtor is not discharged from a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual or pecuniary loss…." *Id*. Despite this narrow language, the United States Supreme Court has held that restitution arising from state criminal convictions falls within this exception to dischargeability. *Kelly v. Robinson,* 479 U.S. 36, 47 (1986).

**A.**

In *Kelly* the Supreme Court was faced with the question of whether restitution ordered by a state criminal Court was dischargeable in bankruptcy. There, after pleading guilty to larceny in the second degree based on wrongful receipt of $9,932.95 in welfare payments, Carolyn Robinson was sentenced to one to three years in prison. *Id*. at 38. Her sentence was suspended, and Robinson was placed on probation for five years. *Id.* As a condition of that probation, Robinson was ordered to make restitution payments at the rate of $100 a month to the State of Connecticut probation office in order to compensate the State for its pecuniary loss. *Id*. at 39, 43. Robinson then filed for Chapter 7 bankruptcy in federal court and was granted a discharge. *Id*. at 39. Following discharge, a dispute arose between Robinson and the probation office regarding the dischargeability of her restitution obligation. *Id*. at 39-43. That dispute eventually found its way to the Supreme Court.

Two main considerations drove the Supreme Court's conclusion that Robinson's criminal restitution payment was non-dischargeable. First, the Court noted that under the Bankruptcy Act of 1898 courts had refused to discharge restitution arising from criminal sentences. *Id*. at 46-47. Noting the statutory canon of construction that Congress must clearly express any intention to change the interpretation of a judicially created concept, the Court found that Congress had not expressed a clear intent to alter the rule that criminal restitution orders were non-dischargeable. *Id.*

Second, and more importantly, the Court recognized that the "right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Id*. This principle, along with the "fundamental policy against federal interference with state criminal prosecutions" led the Court to express its "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Id*. at 47 (internal citation

and quotation omitted). The Court specifically found that "neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution." *Id.* at 57. Underlying this holding was the principal that "[t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Id.* To hold otherwise, the Court found, would "hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems." *Id.* at 49.

As a sovereign State that exercises authority over its own criminal justice system, the State of Michigan has determined that restitution is a crucial component of that system. Under the Michigan Constitution, "[c]rime victims, as defined by law, shall have… [t]he right to restitution." MI CONST. Art. 1, § 24. Michigan has further emphasized the important role of restitution in the State's administration of criminal justice through statute: the CVRA requires state criminal courts to order defendants to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." M.C.L. 780.766(2).

**B.**

The Sixth Circuit has not had occasion to interpret *Kelly*. The closest it has come, *Hughes v. Sanders*, is neither applicable nor instructive, as it deals with civil restitution instead of criminal restitution. 469 F.3d 475 (6th Cir. 2006). Unlike criminal restitution, which is for the benefit of a society as a whole, civil restitution is intended only to resolve disputes between two or more parties. The instant case involves criminal restitution, and therefore implicates the strong interests that sovereign states have in formulating and enforcing their own criminal justice systems that drove the Supreme Court's decision in *Kelly*.

The Third Circuit case cited by the Bankruptcy Court, *In re Rashid*, is also materially distinguishable. 210 F.3d 201 (3d Cir. 2000). In *Rashid* the Third Circuit found that criminal restitution imposed by a federal criminal court was dischargeable in bankruptcy. *Id.* at 203. That case therefore did not implicate any of the important federalism concerns on which *Kelly* was based. Because *Rashid* does not involve a state criminal proceeding, it does not fall within the purview of *Kelly* and is inapplicable to the present case.

More relevant is the Third Circuit's holding in *In re Thompson*, 418 F.3d 362 (3d Cir. 2005), which specifically limited the Third Circuit's holding in *Rashid*. Faced with the question of whether a restitution order from a state criminal proceeding that directed payment to the fraud victim was dischargeable in a Chapter 7 Bankruptcy proceeding, the Third Circuit determined that "the Supreme Court meant what it said in *Kelly* when it held that '§ 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.'" *Thompson*, 418 F.3d at 363 (quoting *Kelly*, 479 U.S. at 50). The Third Circuit specifically found *Rashid* inapplicable, as it was not based on the federalism concerns that were "implicated with full force" in both *Kelly* and the case before it. *Thompson*, 418 F.3d at 367.

**C.**

The fact that the amount of restitution awarded to the victim was determined by the victim's injury does not mandate a different result. *Kelly* itself presented a case in which the restitution was intended to compensate a victim for loss or pecuniary damage caused by the crime. *Kelly*, 479 U.S. at 43. As explained by that Court, "[t]he victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury but on the penal goals of the State and the situation of the defendant." *Id.* at 52. The Court also observed that an obligation to

pay restitution "is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." *Id.* (internal quotation and citation omitted). Based on these observations, the *Kelly* Court ultimately concluded that criminal restitution payments fell within the meaning of § 523(a)(7) because "restitution orders imposed in [criminal proceedings] operate 'for the benefit of' the State. Similarly, they are not assessed 'for… compensation" of the victim." *Kelly*, 479 U.S. at 363.

In formulating its criminal justice system, the State of Michigan has determined that awarding full restitution to victims of criminal conduct serves rehabilitative ends and benefits society as a whole. *See* MI CONST. Art. 1, § 24; M.C.L. 780.766(2). As cogently explained by the state court judge presiding over Mr. Smith's restitution hearing:

> Somebody's going to pay $76,000 for what happened here. And if it's not your client because of a restitution order, it's [Ms. Seidel] or an insurance company; but it's coming out of somebody's pocket. And insurance companies don't get money falling out of the sky. They get it from us. So it's – it's coming from somewhere. Society is bearing a cost. And that's what the Crime Victim's Rights Act is intended to do is distribute that cost to the people that cause the injury.

BR. 72-73. It is not for a federal bankruptcy court to determine that full restitution in this case does not provide any societal or state benefit or any penal or rehabilitative ends – the sovereign state of Michigan has already determined that it does.

### III.

Accordingly, it is **ORDERED** that Debtor Dean J. Smith's restitution indebtedness is nondischargeable, and the July 24, 2015 order of the Bankruptcy Court denying Appellant's motion for summary judgment and the August 21, 2015 order of the Bankruptcy Court granting summary judgment in favor of Appellee are ***REVERSED***.

- 10 -

It is further **ORDERED** that this matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: March 1, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 1, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---